UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

DIANE T. ROGERS,

     Plaintiff,

v.                                  Case No: 5:21-cv-164-CEM-PRL

MINNESOTA LIFE INSURANCE
COMPANY, FRANKLIN MADISON
GROUP, LLC, FINANCIAL
SERVICES ASSOCIATION and
REGIONS BANK,

     Defendants.

_____

## ORDER

This case is before the Court for consideration of Plaintiff's motion to overrule Defendants' discovery objections, compel production of documents, and impose sanctions (Doc. 36), to which Defendants have responded (Doc. 41). For the reasons explained below, Plaintiff's motion is due to be denied.

### I.    Background

In 2018, Plaintiff Diane Rogers's husband, Robert Rogers, died after collapsing and falling from his vehicle in a parking lot and suffering blunt force trauma to his head. (Doc. 1, p. 9). The toxicology report indicated Difluoroethane present in Mr. Rogers's system. (Doc. 1, p. 9). As alleged in the complaint, "Difluoroethane is a gaseous compound used as a refrigerant as well as a propellant in aerosol sprays and gas duster products of the sort used to clean computer keyboards. If inhaled, it can lead to lack of consciousness or even cardiac rhythm disturbances that may result in death. It is not a drug." (Doc. 1, p. 9).

Rogers filed a claim for the loss under an accidental death and dismemberment insurance policy that, as she alleges, was a joint enterprise on behalf of Defendants and offered to checking account customers such as herself at Regions Bank. The original policy (issued to Rogers in 2010) was insured by Hartford Life and Accident Insurance Company and serviced by Affinion as plan administrator, with quarterly premiums drawn from Rogers's bank account. (Doc. 1, p. 6). Between the time of the issuance of the policy and the death of Rogers's husband, various modifications were made to the policy, including a transfer to Minnesota Life Insurance Company as insurer and (as Rogers alleges) a reduction in the coverage. Meanwhile, the premiums drawn from Rogers's bank account remained the same, and Rogers alleges she was not made aware of a reduction in the coverage.

Rogers's claim was denied under an expanded exclusion regarding "[t]he use of alcohol, drugs, medications, poisons, gases, fumes or other substances taken, absorbed, inhaled, ingested or injected, unless taken upon the advice of a licensed physician in the verifiable prescribed manner and dosage." (Doc. 1, p. 8). Plaintiff claims that the expanded exclusion was not a part of the policy issued to her, and that the coverage was materially altered and the insurer changed without her knowledge as part of a scheme organized by Defendants. Rogers seeks damages and declaratory and equitable relief arising from Minnesota Life's failure to pay benefits under the policy, "given the failure of [Financial Services Association ("FSA")], Minnesota Life, Affinion and Regions Bank to notify Rogers of a material reduction in her policy's coverage, and their affirmative misrepresentation that no such reduction had occurred." (Doc. 1, p. 1).

In the complaint, Plaintiff brings the following claims: Count I – breach of fiduciary duty against FSA; Count II – breach of fiduciary duty against Affinion; Count III – breach of

contract against Minnesota Life; Count IV – fraudulent misrepresentation against Minnesota Life; Count V – breach of duty against Regions; Count VI – violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") against all Defendants; Count VII – civil conspiracy against all defendants; and Count VIII – declaratory relief. (Doc. 1).

## II.     Legal Standards

Motions to compel discovery under Rule 37(a) of the Federal Rules of Civil Procedure are committed to the sound discretion of the trial court. *See Commercial Union Ins. Co. v. Westrope*, 730 F.2d 729, 731 (11th Cir. 1984). "The overall purpose of discovery under the Federal Rules is to require the disclosure of all relevant information so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts, and therefore embody a fair and just result." *Oliver v. City of Orlando*, No. 6:06-cv-1671, 2007 WL 3232227, at *2 (M.D. Fla. Oct. 31, 2007).

The moving party "bears the initial burden of proving that the information sought is relevant." *Douglas v. Kohl's Dep't Stores, Inc.*, No. 6:15-cv-1185, 2016 WL 1637277, at *2 (M.D. Fla. Apr. 25, 2016) (quoting *Moore v. Lender Processing Servs. Inc.*, No. 3:12-cv-205, 2013 WL 2447948, at *2 (M.D. Fla. June 5, 2013)). Relevancy is based on the "tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action." *Garcia v. Padilla*, No. 2:15-cv-735, 2016 WL 881143, at *2 (M.D. Fla. March 8, 2016) (quoting Fed. R. Evid. 401).

Proportionality requires counsel and the Court to consider whether relevant information is discoverable in view of the needs of the case. In making this determination, the Court is guided by the non-exclusive list of factors in Rule 26(b)(1). *Graham & Co., LLC v. Liberty Mut. Fire Ins. Co.*, No. 2:14-cv-2148, 2016 WL 1319697, at *3 (N.D. Ala. April 5, 2016).

"Any application of the proportionality factors must start with the actual claims and defenses in the case, and a consideration of how and to what degree the requested discovery bears on those claims and defenses." *Id.* (quoting *Witt v. GC Servs. Ltd. P'ship*, 307 F.R.D. 554, 569 (D. Colo. 2014)).

In order to frame the discovery on this issue, it is essential to determine what the purpose of the discovery is. As the commentary to Rule 26 explains: "A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them." Fed. R. Civ. P. 26. Then, of course, it is the "Court's responsibility, using all the information provided by the parties, . . . to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery." *Id.*

## III.    Discussion

Plaintiff Diane Rogers has moved to overrule Defendants' objections and to compel Defendants to produce responsive documents in response to her first set of requests for production. Defendants, in turn, have filed a joint response asserting that they have already produced responsive relevant documents, and that they have objected to many of Plaintiff's requests because Plaintiff's discovery efforts amount to a "fishing expedition." (Doc. 41, p. 2).

As an initial matter, the Court observes that Plaintiff's brief does not set out each contested discovery request together with Defendants' response in a manner such that the Court can readily evaluate each individual request together with the parties' arguments as to that particular request. Rather, Plaintiff has taken the approach of asking the Court to overrule Defendants' objections in a blanket fashion. This approach is far from ideal and makes it

challenging (to say the least) for the Court to evaluate each individual discovery request and the parties' arguments. Meanwhile, Plaintiff's motion to compel pertains to four different production requests that between them include approximately 94 individual requests. (Doc. 36). Further, and significantly, the Court notes that most of Plaintiff's requests are not limited by any particular time frame, or by any particular context, such as limited to documents related to Plaintiff's policy (as opposed to the entire universe of documents in that defendant's possession relating to the subject of the request). For this reason alone, those requests are disproportional to the needs of the case, even assuming Plaintiff were to sufficiently demonstrate how they are relevant to her claims. Indeed, to the extent that Plaintiff's motion seeks to overrule Defendants' objections and compel all documents in existence in the broad categories stated in the requests, it is due to be denied. As explained below, there are two main flaws with Plaintiff's request to overrule the discovery objections and compel production of documents. First, most of the requests appear overbroad to the extent that they are disproportional to the needs of the case. Second, while there may be particular requests that are appropriate in scope, relevant, and proportional to the needs of the case, Plaintiff has generally failed to sufficiently demonstrate that. It is Plaintiff's burden to demonstrate how the requested information bears on the issues as she understands them.

Within Plaintiff's request for the Court to overrule relevance objections, Plaintiff does identify several individual requests, contending that these categories of information are facially relevant to her claims against Affinion, FSA, and Regions Bank. Those categories include:

1. Certified copies of all Master policies underlying the certificates issued to Ms. Rogers.
2. Information about the "establishment and maintenance of the Plan."
3. The identity and role of the Plan administrator.

4. Defendants' files "related to the solicitation for, and placement of, coverage" with Hartford, Monumental Life, and Minnesota Life.

5. Defendants' manuals, guidelines or written protocols describing, recommending, or establishing procedures for the notification of clients with regards to changes in policy terms and insurance companies.

6. Notices or letters sent to insured under the Plan documents to reduce or change benefits.

(Doc. 36, p. 11). While she provides little explanation, Plaintiff contends that these documents are relevant to her breach of duty claims, FDUTPA claim, and civil conspiracy claim. Plaintiff asserts that these documents are relevant to her claim that Defendants abused their positions of trust and breached fiduciary duties by prioritizing the Plan's profits over the interests of certificate holders, and that they conspired to deceive customers.

### A. Requests for documents relating to a "Master Policy" and "Plan" and information about the "establishment and maintenance of the Plan."

Plaintiff apparently seeks all documents related to a "Master Policy" and "Plan" since 2008, including all communications with Defendants. For example, Plaintiff requests "All documents relating to the Master Policy and the associated certificates of coverage in their entirety." (Doc. 36-4, p. 1). Plaintiff defines "Plan" as "the sale or placement of [AD&D] insurance to customers of Regions by Hartford, Monumental, or ML where FSA was the policyholder." Defendants contend that the only documents in this category that are relevant are those pertaining to policies which covered Plaintiff, and that the vast majority of documents in this category would not be relevant. Defendants contend that they have hundreds of thousands or millions of documents that would be in this broadly defined category. Importantly, Defendants assert that they have already provided copies of all policies and certificates under which Plaintiff was covered.

Defendants also take issue with Plaintiff's references to a "Master Policy," because their position is that no such thing exists. Rather, Defendants' position is that there were three

consecutive policies that provided coverage to Plaintiff. Defendants also argues that the burden associated with locating responsive documents would be disproportionate due to Plaintiff's failure to meaningfully refine her requests. The Court agrees. A review reveals that Plaintiff's requests for documents related to a "Master Policy" or "Plan" and all applicable certificates of coverage are overbroad. Moreover, these requests (and others) appear to be disproportional to the needs of the case. Rule 26 requires the Court to consider factors such as the importance of the issues at stake in the action, the amount in controversy, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. As Defendants point out, the benefit of the policy at issue is perhaps $207,000 (the value of the policy that Defendant alleges terminated in 2014) or, as Plaintiff contends, $300,000 (the value of the original Hartford policy). (Doc 41, p. 1, Doc. 1, pg. 6). Meanwhile, Plaintiff has simply asserted in a conclusory manner that this category of documents is "facially relevant" to her claims for breach of fiduciary duties, FDUTPA, and civil conspiracy. What she has failed to explain is how and why they are relevant to those claims. Or, to borrow the language of the commentary to Rule 26, Plaintiff has failed to explain the ways in which the requested information bears on the issues. As to the requests for documents relating to a "Master Policy" and "Plan" and information about the "establishment and maintenance of the Plan, Plaintiff's request that the Court to overrule Defendants' objections on the basis of relevance and proportionality is due to be denied.

### B.     Requests for the identity and role of the Plan Administrator

Defendants object to Plaintiff's requests seeking "All documents relating to the identify and role of the Plan Administrator," contending that this term has no meaning outside of the ERISA context. Defendants also contend that the requests are overbroad and

not relevant. Meanwhile, Plaintiff asserts that the Plan Administrator is an entity that, along with the Group Policyholder, ordinarily safeguards the interests of the certificate holders.

Defendant contends that it has already produced copies of all policies and certificates issued to her which set forth the role of the purported Plan Administrator. In the context of this discovery dispute, it is unclear whether the Plan Administrator is a role assigned to a particular individual or entity. If so, the specific identity of the Plan Administrator may be relevant if an individual or entity was serving in that role in a context and during a time period relevant to Plaintiff's policy. If that is the case, requesting the identity of the Plan Administrator may be more appropriate in an interrogatory or in the context of a deposition, as opposed to seeking, without limitation, all documents relating to the Plan Administrator. To the extent that Plaintiff requests all documents relating to the identify and role of the Plan Administrator, those requests appear to be disproportional to the needs of the case at this time.

**C.      Defendants' files "related to the solicitation for, and placement of, coverage" with Hartford, Monumental Life, and Minnesota Life.**

At least at this stage, this request appears to be disproportional to the needs of the case, particularly to the extent that it is unclear what is meant by Defendants' files.

**D.      Defendants' manuals, guidelines or written protocols describing, recommending, or establishing procedures for the notification of clients with regards to changes in policy terms and insurance companies.**

At this stage, the Court agrees with Defendants that this request is disproportional to the needs of the case to the extent it seeks manuals, guidelines or protocols unrelated to Plaintiff's policy.

### E.  Notices or letters sent to Insureds under the Plan documents to reduce or change benefits.

At this stage, the Court agrees with Defendants that this request is disproportional to the needs of the case to the extent it seeks the entire universe of notices or letters sent to insureds. It may be the case that Plaintiff can demonstrate that notices or letters to other insureds (other than herself) are relevant, but the scope of such a request would need to be appropriately tailored, and Plaintiff would have to demonstrate that her request is proportional to the needs of the case.

### F.  Other Requests for information that Plaintiff contends is facially relevant.

In addition to the above requests, Plaintiff also seeks numerous other categories of information that she contends are facially relevant to her claims for violation of FDUTPA and Civil Conspiracy. Those categories include:

1. Communications regarding the Plan or master policies;

2. Regions Bank acting as a participating financial organization in the Plan;

3. Manuals, guidelines or written protocols describing, recommending or establishing procedure for changing the insurance companies sponsoring the insurance;

4. The identity or role of the Plan's sale force;

5. The profiles of Defendants' joint enterprise; and

6. The submission and approval of the Master Policy to the Tennessee Department of Commerce and Insurance.

Continuing the same theme, at this stage of the proceedings, the Court finds Plaintiff has neither clearly demonstrated how this information is relevant, nor that it is proportional

to the needs of this case. That could certainly change during the course of this litigation or with more appropriately tailored discovery requests. At this time, however, Plaintiff's motion to compel is due to be denied as to these requests.

To summarize, Plaintiff has neither clearly demonstrated how the broad categories of information that she seeks are relevant to her claims, nor has she demonstrated that the discovery is proportional to the needs of the case. Further, the majority of the discovery requests lack any meaningful limitations on scope, such as context or time. Plaintiff's motion to compel is due to be denied; however, without prejudice to Plaintiff's right to seek any of the same information through more properly tailored discovery requests and/or upon being able to demonstrate how the relevance of the information sought is proportional to the needs of the case.

Going forward, the parties are reminded that both the parties themselves and the interests of justice are best served by counsel making every effort to meaningfully confer in good faith to resolve any disputes regarding discovery. Indeed, it is the parties' obligation under Local Rule 3.01(g), and the Court expects the parties to fulfil both the letter and the spirit of the rule. When disputes arise regarding discovery requests, particularly when those requests are voluminous, a good faith conference will typically require the parties to confer either <u>in person or via telephone</u> and meaningfully discuss <u>each and every</u> individual request that remains in dispute.

- 11 -

## IV.    Conclusion

For the reasons stated above, Plaintiff's motion to overrule Defendants' discovery objections, compel production of documents, and impose sanctions (Doc. 41) is DENIED.

**DONE** and **ORDERED** in Ocala, Florida on December 16, 2021.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties